## TYNG WAREHOUSE CO. v. PAPPAS et al.

No. 4578.   Decided November 1, 1927.   (260 P. 1082.)

*F. W. James,* of Salt Lake City, for appellants.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for respondent.

THURMAN, C. J.

This action was commenced in the city court of Salt Lake City, Utah, December 6, 1922, to recover judgment on a promissory note alleged to have been executed and delivered by the defendants to the Tyng Warehouse & Storage Company, April 27, 1921. The note is for the sum of $799.20, bearing interest at 8 per cent per annum from date until October 10, 1921, after which it bear interest at 12 per cent per annum until paid, both before and after judgment, together with reasonable fees for collection if collected by an attorney.

It is alleged in the complaint that the defendants have not paid the note, or any part thereof, except the sum of $40, paid October 17, 1921, and $10, paid May 17, 1922. It is alleged that numerous demands were made for payment, but that payment was refused. It is further alleged that the note was transferred to the plaintiff for a valuable consideration, and that plaintiff is now the bona fide holder thereof. Finally, it is alleged that the note was made, executed, and delivered by the defendant, Nick Pappas, and that the signature thereto was placed upon said note as and for his signature and was written thereon by him and made, executed, and delivered by him to the payee mentioned in said note as the obligation of said defendant. Plaintiff prays judgment for the amount of said note, together with interest, attorney's fees, and costs.

Summons was served January 9, 1923. No answer or other pleading was filed in the city court, and on June 21, 1923, judgment was entered by default in said court for the sum of $924.50 and costs. An abstract thereof was filed in the district court of Salt Lake county June 27, 1923. Execution was issued on said judgment August 27, 1924, and service thereof made personally on the defendant, Nick Pappas, September 10, 1924, by the sheriff of Salt Lake County. Return thereof was made by the sheriff to the city court, November 13, 1924, with the statement that the judgment was wholly unsatisfied. Another execution was issued by the city court July 21, 1925, but was not served. Another execution was issued March 19, 1926, and the sheriff levied on certain property and advertised it to be sold May 21, 1926. The first publication was on April 27, 1926, and thereafter on May 21, 1926, defendant Nick Pappas served and filed his notice of appeal to the district court of Salt Lake county, whereupon the court by order suspended further proceedings under the execution.

Motion was made by plaintiff to dismiss the appeal on the grounds that it was not served in time. It not appearing from the record that notice of the entry of the judg-

ment in the city court was ever served upon the defendant, as required by law, the motion to dismiss the appeal was denied.

The defendant, Nick Pappas, filed an answer in the district court to plaintiff's complaint in which he denied that he ever signed the promissory note alleged in the complaint, or that he ever delivered said note, or any note, to said company, and denied every other allegation of the complaint. He also denied that he was indebted to plaintiff in any amount whatever. Further answering, said defendant alleged that if the said note was signed by him he did not intend to sign it, did not know he was signing a note, and had no intention of delivering to the Tyng Warehouse & Storage Company said note, or any note at all; that defendant is of Greek nationality and does not read the English language, and that if said note was signed it was signed under a mistake of fact; that there was no consideration to support said note, if it was signed by him. Defendant prayed that the complaint be dismissed, with costs.

The case was tried to the court without a jury. Findings of fact, conclusions of law and judgment were entered in favor of the plaintiff. Defendant appeals and seeks a reversal of the judgment.

Appellant's main contention is that there is no evidence that he executed the note or that there was any consideration therefor. He further contends that the evidence affirmatively shows that he did not execute the note, and that the note, if signed by him, was signed under a mistake of fact and was without consideration.

The evidence without contradiction established the fact that in 1920, and for 10 to 12 years prior thereto, defendant was engaged in the bakery business at Murray, Utah; that during that time he did business with the Tyng Warehouse & Storage Company and purchased flour from said company in carrying on his business; that in 1920 defendant rented his bakery establishment to his son and one other and went out of the bakery business. He then went into the

grocery business at Midvale, Utah, and afterwards did some business with the Tyng Warehouse & Storage Company in 1922 or 1923.

During all of the years mentioned it appears that Charles Tyng was the head of the Tyng Warehouse & Storage Company and its successor in interest the Tyng Warehouse Company, plaintiff in this action. It appears that the latter company is merely a reorganization of the first company and took over its assets. Charles Tyng died in the latter part of October, 1924, and Mr. B. F. Redman of Salt Lake City, thereafter became manager of the plaintiff company.

In order to prove the note, plaintiff's counsel had the defendant sworn as a witness. The defendant, as alleged in his answer, is a Greek, and from the nature of his answers to counsel's questions he apparently was not well versed in the English language. His answers were not always responsive to the questions and were oftentimes wholly irrelevant and unintelligible. However, it is fair to state that from his answers can be adduced the fact that he categorically denied the execution of the note in question and denied that it was his signature on the note or that he was indebted to the Tyng Warehouse & Storage Company at the time of the execution of the alleged note. This was made more clear when he was examined in chief by his own counsel, at which time it appears there was a marked improvement in his English. He produced a purported bill from the plaintiff company without date as to when the goods were purchased except that it appears from the printed form it must have covered some transaction in 1920 or subsequent thereto prior to September, 1924, when he testified he paid the plaintiff $20 on account. The bill is receipted for that amount and purports to show a balance due in the sum of $43. Defendant testified that after he rented his bakery and went into the grocery business at Midvale he did business with the plaintiff in 1922 and 1923 in the purchase of flour, and that the bill referred to resulted from these transactions.

Mr. E. A. Smith, Jr., testified for defendant as an expert on handwriting, and several checks containing genuine signatures of defendant were examined by him in connection with the signature on the note for the purpose of comparison. He testified that he found more dissimilarities between the signature on the note and the signature on the checks than similarities, and for that reason he thought the signature on the note was not that of appellant.

A. H. Hougaard testified for plaintiff. He stated that he lived in Salt Lake City and was the attorney for plaintiff, was acquainted with defendant Nick Pappas, and had been attorney in connection with bringing the action against him. He testified concerning the commencement of the action December 6, 1922, and produced numerous carbon copies of letters purporting to be addressed to the defendant, one of which was dated August 14, 1922, informing defendant that the note had been placed in his hands for collection and stating the date and amount of the note and the indorsements thereon, with a request for payment or satisfactory security. The other letters were dated August 3, 1925, September 3, 1925, September 16, 1925, and January 8, 1926. All of these purported letters except the first, which refers to the note, make reference to the judgment, and they all relate in some manner to settlement of the judgment. The witness testified that all of these letters were addressed to the defendant by mail, postage prepaid, with witness' post office address on the envelope; that on every occasion thereafter defendant appeared at witness' office in Salt Lake City and discussed with him the matter of settlement; that on two different occasions he showed defendant the note, and defendant said he wanted to arrange to pay it. He wanted to go and see Mr. Tyng about it as he had had trouble with his business at Murray and would have to make some arrangements. Witness told him it would be agreeable to him for defendant to take the matter up with Mr. Tyng, and that any settlement he would make with him would be all right, but that it must be settled or he would take judgment

against him; that defendant stated the summons had been served upon him. Witness heard nothing further from defendant before the judgment was entered. After that defendant came into witness' office a great many times, and on each occasion stated he was expecting money with which to pay the obligation; that at one time he stated he was about to sell his place at Murray to the smelter company and would then pay the note and judgment. Witness told defendant they had no desire to take advantage of him, and if he could dispose of his property to advantage he would not press the judgment until he had opportunity to make a sale. Defendant promised to keep witness advised as to the progress he was making. It is impossible to state in detail the various incidents and circumstances testified to by the witness, all of which tended to show that either the note or the judgment, and the settlement thereof, was the subject of the various interviews between the witness and the defendant. Furthermore, the conclusion is irresistible that the defendant understood he was charged with the execution of the note and at no time denied the obligation when pressed for its collection, but on the contrary, by his conduct, admitted it and promised to make settlement. Nor did he ever at any time show to any one representing the plaintiff the bill above referred to showing a receipt for $20 and a balance due of $43. Notwithstanding this omission, he testified that in all the conversations he had with plaintiff's representatives he thought they referred to the balance of $43, and not to a note or judgment.

But there were other witnesses for plaintiff besides the witness Hougaard. Willard Hanson, associated with Hougaard as attorney for plaintiff, testified that after the judgment had been obtained and an execution issued thereon defendant, with Ernest Pappas, an interpreter, came into his office to ask about not selling the property. Ernest did most of the talking. Neither of them spoke in Greek. Ernest asked if witness would have the sale stopped and extend time of payment as defendant was negotiating a sale of his

property to the smelter company and he thought within a short time he could effect a sale. The defendant joined in that conversation and said he was quite sure he could sell the property and asked witness if he would consent to withhold the sale. Witness asked defendant how long it would take, and he answered about a couple of months. Witness called Redman by phone and told him he was not going to sell the property at that time as he thought there was a chance to get the money without it. Witness also instructed Mr. Hougaard to that effect, as he was handling the case. Defendant on two or three occasions after that came to the office, after letters had been written to him, and represented that he was still negotiating and trying to sell the property and pay off the judgment. One or two executions that had been issued were withdrawn, and no sale made under them. The first one was withheld because of defendant's promises. When the property was finally advertised for sale under an execution, defendant came and told witness he was trying to get some of his Greek friends to raise some money. Witness told defendant he was tired of such stories and that they were going to sell the property.

B. F. Redman, testifying for plaintiff, stated he knew defendant since shortly after Mr. Tyng's death, was acquainted with Mr. Tyng in his lifetime, and was associated with him in business; that Mr. Tyng went out of the flour business in 1921 or 1922. Witness said a month or six weeks after Mr. Tyng's death he wrote defendant a letter asking him when he was going to pay the judgment; that he came in, pleaded poverty, and begged witness not to enforce the judgment until such time as he could get some money by selling his property; that he had a deal on with the American Smelting Company. Witness told him, "All right," to go ahead and see what he could do. Defendant came in quite often and told witness his troubles He offered at one time to sell his property to witness. Defendant could not just properly express himself, but the substance of talk was that if witness could sell the property defendant would

pay the judgment. After that there was a conversation between them about witness taking a deed and giving defendant 60 or 90 days to redeem the property if he paid the judgment. Witness refused, as he did not want to be bothered with trying to sell the property. Afterwards defendant came and wanted a job as watchman at the warehouse, so he could pay the judgment.

We have now stated the main features of the evidence upon which the parties rely in support of their respective contentions. The evidence relied on by plaintiff is almost, if not entirely, circumstantial. No witness was produced who saw the defendant execute the note. The obsolete accounts of the Tyng Warehouse & Storage Company were all destroyed by fire. The present company is a continuation of the old company which failed in 1921, and the books, prior to that time, were destroyed. This appears from the testimony of Mr. Redman. So that the accounts upon which the note was predicated had been destroyed, and Mr. Tyng was dead. The question is, Are the circumstance relied on—mainly the conduct of the defendant—sufficient to sustain the findings of the court? Appellant challenges their sufficiency, and in that connection discusses many propositions of law and cites many authorities, which, in the opinion of the writer, have no application to the case. No one disputes the proposition that an inference based upon an inference is not evidence of a fact. Nor need we, in the instant case, dispute the proposition that a mere presumption, although sufficient to establish a prima facie case, has no probative force when controverted by the positive testimony of witnesses who testify to the fact. But these propositions of law have no application here. It is not necessary to refer to the vast array of authority marshaled by appellant's counsel in support of these propositions. The sole question here is, Was the conduct of defendant covering a period of three years or more from the time he was first called on to pay the note in 1922 until his property was advertised for sale on execution in April, 1926, such as to

amount to an admission that the note was his obligation and based upon a valid consideration? In other words, was such conduct substantial evidence sufficient to justify the findings of the court in favor of the plaintiff on the issues presented by the pleadings?

The testimony of defendant's expert witness on handwriting was based entirely on comparison of the signature on the note with genuine signatures on numerous checks. It certainly cannot be contended that such evidence was conclusive any more than it can be contended that the defendant's denial of the signature was conclusive. The trial court saw the notes and checks, heard the expert testify, and heard him state the basis of his opinion. The trial court commented on that feature of the evidence in his oral opinion, thereby showing that he gave the matter painstaking consideration.

Considerable stress is placed upon the exhibit introduced in evidence, which evidenced a receipt by the plaintiff of $20 and a balance due of $43. This, it is contended by appellant's counsel, is practically conclusive that he was not obligated on the note. When we take into consideration the fact that appellant testified the bill was sent to him and he paid $20 on it to Mr. Tyng in the fall of 1924, taking the receipted bill as evidence, and consider the further fact that during all of the remaining months of 1924 and all of 1925 when these negotiations for settlement were in progress he never at any time showed the bill to any of plaintiff's representatives, we are not surprised that the trial court treated it as of little consequence in determining the rights of the parties.

We are of opinion the evidence was sufficient to sustain the findings of the court.

The judgment is affirmed at appellant's cost.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.